IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| LAMMERS BARREL PRP GROUP, | ) | CASE NO. 3:17-cv-00135-WHR |
| | ) | |
| Plaintiff, | ) | JUDGE WALTER H. RICE |
| | ) | MAGISTRATE JUDGE SHARON L. |
| v. | ) | OVINGTON |
| | ) | |
| CARBOLINE COMPANY, *et al.* | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **ETC SUNOCO HOLDINGS, LLC** |
| Defendants. | ) | **F/K/A SUNOCO, INC.'S AND** |
| | ) | **CARBOLINE COMPANY'S** |
| | ) | **MOTION *IN LIMINE* TO EXCLUDE** |
| | ) | **2001 AND 2003 DEPOSITIONS** |

### I.     INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiff, Lammers Barrel PRP Group ("Plaintiff" or the "PRP Group"), seeks to hold Defendants ETC Sunoco Holdings, LLC f/k/a Sunoco, Inc. ("Sunoco") and Carboline Company ("Carboline") liable under CERCLA for cleanup costs at the Lammers Barrel Superfund Site (the "Site"). Since there is no evidence that either Sunoco or Carboline themselves disposed, or arranged for the disposal of, any hazardous substances at the Site, Plaintiff is attempting to hold Sunoco and Carboline liable for the alleged conduct of entities known as The Moran Paint Company ("Moran Paint"), which is further alleged to have conducted business activities at or near the Site several decades ago, and years before the Site was destroyed by a catastrophic fire and explosions in 1969.

Plaintiff's allegations regarding the activities of Moran Paint are based primarily on the testimony of two former Site employees – Anthony Kohnen, who worked for the original Moran

Paint Company before he purchased the Site in the early 1950's and operated a solvent recovery business there, and Cecil Brown, who worked for the original Moran Paint Company for a brief time and then worked primarily for the separate barrel reconditioning facility that operated at the Site. *See* 8-5-03 Deposition of Anthony Kohnen, relevant excerpts of which are attached as Exhibit A, at 24:24-25:8; 8-5-03 Deposition of Cecil Brown, relevant excerpts of which are attached as Exhibit B, at 17:17-19:1, 22:18-20. These witnesses appeared for administrative depositions before the United States Environmental Protection Agency ("USEPA") in 2001, and USEPA re-deposed Kohnen and Brown in 2003.

These depositions are not admissible against Sunoco or Carboline. First, neither Sunoco nor Carboline (nor, indeed, any other potentially responsible party) was given notice of the 2001 administrative depositions, so none of those depositions is admissible against them. Second, Carboline was not provided notice of the 2003 depositions at all, and third, while Sunoco was informed that the 2003 depositions were taking place, it was not provided with information that would have given it a reason to cross-examine either Kohnen or Brown regarding Moran Paint. The only known Sunoco affiliate mentioned in the depositions was not Moran Paint but Sunoco, Inc. (R&M) n/k/a Sunoco (R&M), LLC.

In particular, Sunoco, Inc. (R&M) was a subsidiary of Sunoco that operated a Dayton oil distribution facility whose operations involved transferring oil from pipelines or tank trucks into drums. *See* Affidavit of Michael J. Burdge, Esq., a copy of which is attached as Exhibit C, at ¶ 3.[1] Sunoco was not made aware, based on the information presented to it, of any purported nexus to

---

[1] Sunoco, Inc. (R&M), through its successor Sunoco (R&M), LLC, entered into a *de minimis* settlement agreement concerning the Lammers Barrel Site with the United States on April 21, 2017. *See* Declaration of Ronald M. McMillan, a copy of which is attached as Exhibit D, at ¶ 2 and Ex. D-1, *De Minimis* Administrative Settlement Agreement and Order on Consent.

4825-9645-9433, v.2

the Site other than through Sunoco Inc. (R&M), and certainly not purportedly through Moran Paint. *See* Burdge Aff. at ¶ 6 ("no one who represented the United States Environmental Protection Agency, the United States Department of Justice or any of the other potentially responsible parties at the Site suggested any connection between Sunoco, Inc. and the Site other than allegedly through the Sunoco, Inc. (R&M) facility in Dayton").

USEPA filed a Petition for the Rule 27 perpetuation depositions, and in that Petition, USEPA noted that it had deposed Kohnen and Brown in 2001 without providing notice of same to any potentially responsible parties. *See* Petition to Perpetuate Testimony, McMillan Dec., Ex. D-2. USEPA stated in the Petition that it "believes that the judicial depositions of Mr. Kohnen and Mr. Brown would be indispensable in identifying additional potentially responsible parties," *id.* at 4, but USEPA disclosed nothing in the Petition indicating that Moran Paint might be connected to other entities. Indeed, the Petition does not mention Moran Paint at all, nor does the order granting same. *See id.* The order granting the Petition does, however, require notice to be given if another PRP is identified during the witness' testimony:

> If during testimony in an Original Session, the deponent identifies a party not previously notified of the deposition, the United States shall provide notice to such party (which shall thereupon also be deemed an adverse party) of the Continued Date and location for the deposition, which notice shall also include a copy of the Rule 27 Petition filed by the United States and a copy of this Order. The notice shall be served no later than seven (7) days following the day of completion of the Original Session and shall include a brief summary of the deponent's testimony regarding the adverse party. If notice an any such party cannot be served as provided herein, the United States or any other party may seek leave of court for (a) additional time to effectuate personal service or service by publication, as appropriate, and (b) additional time to allow any such party so noticed to conduct its questioning of the deponent during the Continued and/or Final Sessions of the deposition as necessary to provide adequate notice under Rule 27.

*See Petition of the United States of America to Perpetuate Testimony Pursuant to Rule 27 of the Federal Rules of Civil Procedure*, S.D. Ohio No. 3:3-mc-00005, Dkt. No. 5, ¶ 6. USEPA did not

3

serve Moran Paint, Carboline, or Sunoco after testimony about Moran Paint was elicited from Kohnen and Brown, so no one appeared on their behalf.

Accordingly, when the Petition was mailed to Sunoco, Michael Burdge, counsel for Sunoco, Inc. (R&M), *and only Sunoco, Inc. (R&M)*, appeared at the depositions, because only Sunoco, Inc. (R&M) was identified in the Petition by USEPA as a potentially adverse party. *See* Petition, Ex. D. Mr. Burdge was not asked to or engaged by, and did not represent, Moran Paint Company and was not authorized (nor made aware) to cross-examine either deponent or otherwise take any action concerning Moran Paint Company at the depositions in the Rule 27 Matter. Burdge Aff. at ¶¶ 3-4.

Although there was testimony regarding Moran Paint Company by Kohnen and Brown during the depositions, Mr. Burdge had no knowledge of Moran Paint Company, of any facility which it may have owned or operated in Beavercreek, Ohio or Xenia, Ohio, or of any alleged affiliation between Sunoco and Moran Paint. *Id.* at ¶ 5. During the depositions of Kohnen and Brown, no one suggested that there was or had been any affiliation between Sunoco and Moran Paint Company. *Id.* at ¶ 7. Not surprisingly, Sunoco, Inc. (R&M)'s counsel conducted cross-examinations that pertained only to Sunoco, Inc. (R&M)'s activities and oil drums alleged to have been sent to the Lammers Barrel Site. *See*, *e.g.*, 10-3-03 Deposition of Anthony Kohnen, relevant excerpts of which are attached as Exhibit E, at 739:4-748:20.

With no one to represent Moran Paint, or its alleged successors, at the depositions, group counsel for Plaintiff played tennis with the net down, peppering Kohnen with leading questions to which no one objected. *Id.* at 755:14 to 756:4. Counsel then led Mr. Kohnen to give one-word "yes" answers to questions about Moran's alleged use of half a dozen other solvents (*id.* at 756:5-20), and when his recollection then failed to satisfy her, counsel led Kohnen even further. *Id.* at

4

756:21-757:6. Notwithstanding counsel's leading, however, Kohnen did not testify that any actual releases occurred prior to the 1969 fire.

Under these circumstances, it would be manifestly unfair to permit Plaintiff or its experts to use any of the Kohnen, Brown, or Scott testimony against Sunoco or Carboline.

## II.  LAW AND ARGUMENT

### A.  Standard for Granting Sunoco's and Carboline's Motion *in Limine*.

This Court recently held as follows regarding granting a motion *in limine*:

> Although neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorizes the Court to rule on an evidentiary motion *in limine*, the Supreme Court has noted that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38,41 n.4, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984). The purpose of a motion in limine is to allow the Court to rule on issues pertaining to evidence in advance of trial in order to both avoid delay and ensure an evenhanded and expeditious trial. *See Ind. Ins. Co. v. GE*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)). Also, pretrial orders often save the parties time and costs in preparing for trial and presenting their cases.

*Hobart Corp. v. Dayton Power & Light Co.*, No. 3:13-cv-115 (Sept. 23, 2019), 2019 U.S. Dist. LEXIS 162464, **62-63.

Under these standards, none of the Kohnen or Brown testimony should be admitted against either Sunoco or Carboline, as neither defendant was given sufficient notice of the depositions to permit proper cross-examination of the witnesses.

### B.  Kohnen's and Brown's Testimony is Inadmissible Against Sunoco and Carboline Due to the Failure to Give Notice.

The depositions of Kohnen and Brown were not taken in a civil litigation matter but in Rule 27 proceedings for the purpose of preserving the witness' testimony in the event of a lawsuit being filed later. Civil Rule 27 perpetuation depositions are more limited than depositions taken in a regular action under Civil Rule 30. *See* Fed. R. Civ. P. 27 (a)(1) (petition for deposition to

5

perpetuate testimony must show "the subject matter of the expected action and the petitioner's interest" and "the facts that petitioner wants to establish by the proposed testimony"). In order for Plaintiff to use the Brown and Kohnen depositions against Sunoco, Plaintiff has the burden to show the provision of sufficient notice as to why the depositions were being taken, specifically any alleged link between Moran Paint Company, Carboline and Sunoco, and the Lammers Site. Plaintiff did not do so (nor did USEPA). *See also* Deposition of Susan Franzetti, relevant excerpts of which are attached as Exhibit F, at 28:5-10 ("I wasn't providing notice of the depositions. The Government was."). Under Federal Rule 27, and as conceded in USEPA's Petition, a person who desires to perpetuate testimony must include with its petition "the names or a description of the persons the petitioner expects will be adverse parties and their addresses so far as known" and "the substance of the testimony which the petitioner expects to elicit" from each witness. USEPA did not provide a description of the expected adverse parties (other than to say PRPs); however, the United States did name individual parties in Exhibit D to the Petition, and that Exhibit did not include Moran Paint, Sunoco, or Carboline.

Notably, USEPA set forth reasons in the Petition why filing a lawsuit should be unnecessary, yet, if the United States had commenced a lawsuit, it would have had to separately name and serve Sunoco and Carboline as a party to the extent that USEPA was claiming a nexus to Moran Paint. By failing to do so in the absence of a lawsuit, USEPA deprived Sunoco and Carboline of the adequate notice and of the opportunity to cross-examine either witness.

Evidence Rule 804(b)(1)(B) permits a prior deposition to be used against a party who was present at that deposition only if that party "an opportunity ***and similar motive*** to develop it by direct, cross-, or redirect examination." (Emphasis added.) *See United States v. Salerno*, 505 U.S. 317, 321 (1992) (to admit offered testimony under Evidence Rule 804(b)(1), the proponent must

satisfy both requirements of the rule: unavailability and similar motive and opportunity to develop the challenged testimony). As the court held in *In re Complaint of Paducah Towing Co.*, 692 F.2d. 412 (6th Cir. 1982), "[i]f a meaningful opportunity to develop the former testimony was not afforded, then the testimony may properly be assumed to be less reliable." 692 F.2d at 418.

Mr. Burdge's declaration establishes that he was engaged to attend the Brown and Kohnen depositions to evaluate their testimony as against Sunoco, Inc. (R&M), not as against Sunoco, or Carboline, or any Moran Paint Company entity. No one, either on behalf of Plaintiff or on behalf of USEPA, informed Mr. Burdge that they would ultimately seek (or even was a possibility) to hold Sunoco or Carboline liable for Moran's activities. Thus, the purported notice fails to satisfy Rule 804. *See Hobart Corp. v. Dayton Power & Light Co.*, No. 3:13-cv-115 (S.D. Ohio Nov. 29, 2017) (Rice, J.), 2017 U.S. Dist. LEXIS 197856, * 37 (attorney present at prior deposition "had no idea at that time" that his client was associated with another entity; thus, he "had no motivation to cross-examine statements" made by the witness concerning the other entity). Plaintiff cannot use either witness' deposition against Sunoco and Carboline, and without it, Plaintiff has nothing more than the bare allegations in its Complaint to submit against this Motion. Those allegations are insufficient as a matter of law.

### C. Kohnen's Depositions Are Not Sufficiently Reliable to Permit Admission Under the Residual Exception to the Hearsay Rule.

Sunoco and Carboline expect Plaintiff to argue that Kohnen's testimony is admissible at trial under Evidence Rule 807, the residual exception to the hearsay rule, which provides in part:

> Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:
>
> (1) the statement has ***equivalent circumstantial guarantees of trustworthiness***;
>
> (2) it is offered as evidence of a material fact;

7

  (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and

  (4) admitting it will best serve the purposes of these rules and the interests of justice.

*Id.* (emphasis added); *see also Hobart Corp. v. Dayton Power & Light Co.*, No. 3:13-cv-115 (Sept. 23, 2019), 2019 U.S. Dist. LEXIS 162464, **74-76 (excluding testimony from witness that lacked equivalent circumstantial guarantee of trustworthiness).

  At his administrative deposition, on June 20, 2001, Kohnen explained that he was 78 years old, sick with cancer and on medication. 6-20-01 Deposition of Anthony Kohnen, relevant excerpts of which are attached as Exhibit G, at 6:23-25, 7:23-8:1-4 and 9:3-4.) He also explained that he is "deaf in both ears" and, although he wears hearing aids, they "are not that effective so [he does not] hear everything." (*Id.* at 7:2-5.) Kohnen's testimony at his second deposition in August 2003 regarding other PRPs was inconsistent with both statements made during the earlier administrative deposition and with charts that were created for him by his attorney. (*Compare*, *e.g.*, *id.* at 49:2-12 (stating he does not remember if Amos Molded Plastics sent material to the Site); with 8-7-03 Deposition of Anthony Kohnen, relevant excerpts of which are attached as Exhibit H, Dep. Ex. 7A at 1 (listing Amos Molded Plastics as a Lammers Barrel customer for 3 to 5 years and shipping 80 drums per load to the Site), *with id.* at 279:7-16 (describing Amos Molded Plastics as a customer for 2 to 3 years and shipping 70 drums per load); *compare also* 6-20-01 Kohnen Dep. at 50:21-23 (stating that Kohnen's company did work for Continental Can Co. but Kohnen could not recall the details), *with* 8-7-03 Kohnen Dep. Ex. 7A at 3 (listing Continental Can Co. as a Lammers Barrel customer for 2 to 3 years and shipping 5 to 10 drums per load to the Site), *and with id.* at 315:10-23 (describing Continental Can Co. as a customer for "a year or two" and shipping "between 20 and 25" drums per load).)

8

Additionally, during his August 2003 deposition, Kohnen acknowledged that the professionally type-written tables in Exhibit 7 and Exhibit 7A to the deposition listing other PRPs connection to the Site were created with his attorney's "assistance." 8-06-03 Deposition of Anthony Kohnen, relevant excerpts of which are attached as Exhibit I, at 187:6-7; *see also* 8-7-03 Kohnen Dep. at 255:5-19 (Kohnen's counsel stating that Exhibit 7A was created in same manner as Exhibit 7 and contain same information).) When asked who made any corrections to the Exhibit, Kohnen responded, "Steve, [his attorney.]" (8-6-03 Kohnen Dep. at 190:3-16.) Moreover, after being asked if he had a chance to review the accuracy of Exhibit 7, Kohnen responded, "No, ma'am, not that – I would say no." (*Id.* at 188:13-189:12.)

Furthermore, during the August 7, 2003, deposition, upon examination by the Department of Justice counsel, Kohnen could not answer questions with any clarity regarding the creation of Exhibits 7 and 7A and his own attorney had to step in to "walk" Kohnen through the exhibits. At the August 7, 2003, deposition, the DOJ attorney who conducted Kohnen's initial examination, stated that Kohnen's responses regarding the creation of Exhibits 7 and 7A lacked "clarity" with respect to how "the names of the companies" were placed on the exhibits. (8-7-03 Kohnen Dep. at 269:7-11.) After further questioning and a discussion off the record, the DOJ attorney announced that "it would be useful to have Mr. Kohnen's counsel walk him first through Exhibit 7 and 7A and thereafter [she] may follow up with any additional questions . . . ." (*Id.* at 270:24-271:9.) During the next two days of questioning, Kohnen's attorney proceeded to question Kohnen regarding the companies listed in the exhibits that the attorney himself had obviously prepared. In essence, the attorney was examining himself, and authenticating, or bootstrapping, his own documents.

9

It also bears noting that Kohnen, as a former owner-operator at the Site, was himself a PRP and thus had an incentive to inflate the amount of waste he "recalled" other PRPs sending to the Site. For all of these reasons, Kohnen's testimony is inherently unreliable.

### III.   CONCLUSION

For the foregoing reasons, Sunoco and Carboline request that the Court enter an Order precluding the use of Anthony Kohnen's or Cecil Brown's depositions at the trial of this matter.

Date:  November 5, 2019

Respectfully submitted,

*/s/ William E. Coughlin*
WILLIAM E. COUGHLIN (0010874)
Trial Attorney
SUSAN R. STROM (0043734)
RONALD M. McMILLAN (0072437)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio  44114
(216) 622-8200
(216) 241-0816 – Facsimile
*wcoughlin@calfee.com*
*sstrom@calfee.com*
*rmcmillan@calfee.com*

Attorneys for Defendants ETC Sunoco Holdings, LLC f/k/a Sunoco, Inc. and Carboline Company