IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| LAMMERS BARREL PRP GROUP, | ) | CASE NO. 3:17-cv-00135-WHR |
| | ) | |
| Plaintiff, | ) | JUDGE WALTER H. RICE |
| | ) | MAGISTRATE JUDGE SHARON L. |
| v. | ) | OVINGTON |
| | ) | |
| CARBOLINE COMPANY, *et al.* | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **ETC SUNOCO HOLDINGS, LLC** |
| Defendants. | ) | **F/K/A SUNOCO, INC.'S AND** |
| | ) | **CARBOLINE COMPANY'S** |
| | ) | **MOTION *IN LIMINE* TO EXCLUDE** |
| | ) | **OPINIONS OF PLAINTIFF'S** |
| | ) | **EXPERTS** |

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiff, Lammers Barrel PRP Group ("Plaintiff" or the "PRP Group"), seeks to hold Defendants ETC Sunoco Holdings, LLC f/k/a Sunoco, Inc. ("Sunoco") and Carboline Company ("Carboline") liable under CERCLA for alleged cleanup costs at the Lammers Barrel Superfund Site (the "Site"). Since there is no evidence that either Sunoco or Carboline themselves disposed, or arranged for the disposal of, any hazardous substances at the Site, Plaintiff is attempting to hold Sunoco and Carboline liable for the alleged conduct of entities known as The Moran Paint Company ("Moran"), which is further alleged to have conducted business activities at or near the Site several decades ago, and years before the Site was destroyed by a catastrophic fire and explosions in 1969.

Given the dearth of admissible evidence in the record that might create a nexus between either Sunoco or Carboline and the Site, Plaintiff has offered two expert opinions in this action.

4821-1386-9481, v.2

Plaintiff's first expert is Matthew Low, the allocator originally engaged by the PRP Group in 2012 to provide percentages of generator (as opposed to owner-operator) responsibility to facilitate allocation among the members of the PRP Group. The second is Richard Williams, who purports to opine as to the alleged liability of "owner-operators" like the original Moran. Neither expert's opinion is admissible as to Moran, Sunoco, or Carboline. Indeed, Mr. Low acknowledges the inadmissible nature of his opinions – as found by another district court – but Plaintiff offers his opinions nevertheless.

Each expert relied heavily on deposition testimony that is inadmissible at trial and on which they make inadmissible credibility calls. Dr. Williams also admitted to assigning an arbitrary percentage of owner-operator liability to Moran, rather than basing that percentage on evidence, and Mr. Low adopts that arbitrary percentage in his broader allocation. For numerous reasons, Dr. Williams' and Mr. Low's opinions should be excluded by the Court.

## II.    LAW AND ARGUMENT

### A.    Standard for Granting Sunoco's and Carboline's Motion *in Limine*.

This Court recently held as follows regarding granting a motion *in limine*:

> Although neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorizes the Court to rule on an evidentiary motion *in limine*, the Supreme Court has noted that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38,41 n.4, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984). The purpose of a motion in limine is to allow the Court to rule on issues pertaining to evidence in advance of trial in order to both avoid delay and ensure an evenhanded and expeditious trial. *See Ind. Ins. Co. v. GE*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)). Also, pretrial orders often save the parties time and costs in preparing for trial and presenting their cases.

*Hobart Corp. v. Dayton Power & Light Co.*, No. 3:13-cv-115 (Sept. 23, 2019), 2019 U.S. Dist. LEXIS 162464, **62-63.

Additionally, Federal Rule of Evidence 702 governs the admission of expert testimony, dictating that admissible expert testimony must "assist the trier of fact." "[T]he district court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring 'that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 677 (6th Cir. 2011) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). To be admissible under Rule 702, expert testimony "requires 'more than subjective belief or unsupported speculation[.]'" *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 670 (6th Cir. 2010). "The '*ipse dixit* of the expert' alone is not sufficient to permit the admission of an opinion." *Finn v. Warren Cty., Kentucky*, 768 F.3d 441, 452 (6th Cir. 2014). Significantly here, the "arbitrary 'guesstimations'" of an expert do not pass muster. *Coffey v. Dowley Mfg., Inc.*, 89 F. App'x 927, 931 (6th Cir. 2003).

The trial court's gate-keeping function with respect to expert testimony also applies to bench trials. *Bradley v. Brown*, 852 F. Supp. 690, 700 (N.D. Ind. 1994), *aff'd*, 42 F.3d 434 (7th Cir. 1994) (granting motion in limine: "The court has found no authority that suggests this gatekeeping function is inapposite at a bench-trial and, indeed, the requirement that a scientific expert base his or her testimony upon scientific knowledge is equally apropos regardless of the identity of the fact-finder."). Under these standards, Plaintiff's experts should not be permitted to present their opinions at trial.

### B.   Mr. Low's Opinions Have Previously Been Excluded and Should Be Excluded Here.

Mr. Low concedes in his expert report that, while he has testified in certain courts, his opinions have been subject to exclusion in the past: "I have had my testimony excluded in one case, the court finding that while I took great care in grounding my analysis in objective fact, my opinion ultimately addressed application of equitable issues that were properly addressed by the

3

Court." Expert Report of Matthew Low, relevant excerpts of which are attached as Exhibit A, at 9.

The reasoning in that case, *New York v. Westwood-Squibb Pharmaceuticals, Inc.*, Civ. No. 90-CV-1324, 2001 U.S. Dist. LEXIS 11765 (W.D. N.Y. June 23, 2001), applies with equal force here. In that case, Mr. Low provided the court with an "allocation framework" that suggested that the court should allocate responsibility by applying suggested percentages to two broad categories of equitable factors, after which Mr. Low suggested various allocation scenarios for the court's consideration. *Id.* at *10-13. Mr. Low further acknowledged "that his proffered testimony mirrors the allocation analysis that courts undertake under CERCLA § 113(f)." *Id.* at *13. The proponent of Mr. Low's testimony asserted that he was merely opining on issues of fact, but the court noted that the allocation required by CERCLA is equitable and thus a mixed question of law and fact: "Low does *not* merely seek to proffer opinions on ultimate issues of fact; he seeks to offer opinions on mixed issues of law and fact: which equitable factors to choose, how to weigh those factors, and what facts to apply to those factors." *Id.* at *30.

> Since Low's testimony is ultimately directed at issues of equity, his testimony is more like a series of legal conclusions than it is like a series of opinions on ultimate issues of fact. While Rules 701, 702, and 704 of the Federal Rules of Evidence abolished the "ultimate issue" rule, *see supra* Part II, B, 1, these rules are not intended to open the door for experts to state conclusions of law from the witness stand.

*Id.* at *31-32.

Here Mr. Low attempts to slide his opinions under the radar by asserting that they are "intended only to assist the Court," Low Rept. at 2, but Low proceeds to describe the equitable factors he opines should be applied, and the ways by which the Court should apply them, in over a dozen pages of his opinion. *Id.* at 10-23. *See Am. Special Risk Ins. Co. v. City of Centerline*, No. 97-CV728974-DT (E.D. Mich. June 24, 2002), 2002 U.S. Dist. LEXIS 12343, at *29 (excluding

4

allocation expert opinion because it did "not 'aid' the Court in understanding the facts; rather [the expert's] testimony attempts to persuade the Court, as it is the attorneys' jobs to do, how it should allocate costs in this case."); *Chitayat v. Vanderbilt Assocs.*, No. CIV A 03-5314 DRH ML (E.D.N.Y. Sept. 27, 2007), 2007 U.S. Dist. LEXIS 72207, at *19 ("while expert testimony might illuminate the court's consideration of equitable factors, balancing those factors to arrive at an equitable allocation is an essentially judicial function.") (internal quote omitted). Mr. Low is attempting here to do just what the other courts have rejected, and this Court should similarly reject Mr. Low's improper opinions.

Moreover, Mr. Low's opinion merely recycles the allocation he prepared in 2012 for the PRP Group, where his mission was not allocation of liability in a contested matter, but instead development of a framework for a large group of PRPs to buy into for settlement purposes, *i.e.*, "getting to yes." *See* Low Rept. at 12 ("For the purpose of this report, I have adopted the analysis I performed in 2012 and the resulting generation allocation percentages produced by that analysis"); Deposition of Matthew Low, relevant excerpts of which are attached as Exhibit B, at 82:21-83:14 (testifying that the report he prepared in 2012 for purposes of this case derives from his 2012 work). He performs no independent analysis for the purpose of allocating liability to the five defendants in this case.

### C. Plaintiff's Experts Speculate as to Owner-Operator Liability.

Dr. Williams purports to assign a five-percent share of owner-operator liability to Moran, but his opinion as to potential releases by Moran was admittedly not based on any evidence. Dr. Williams testified that he had no knowledge of any actual releases during Moran's tenure at the Site from 1944 to 1951. Deposition of Richard Williams, relevant excerpts of which are attached

5

as Exhibit C, at 40:19-22.[1] Dr. Williams testified that "[c]ertainly the 5 percent [allocation to Moran] is an arbitrary allocation." *Id.* at 101:6-7.

Thus, because Dr. Williams' "arbitrary allocation" opinion as to Moran owner-operator liability is based only on "uncertainty," it cannot support a liability finding. *Id.* at 52:13-53:10. Although Evidence Rule 702 does not require absolute certainty on the part of an expert, an expert's opinion cannot be based on mere speculation. *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir. 2010); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 2795 (1993) ("under the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable"); *Ninth Ave. Remedial Group v. Allis-Chalmers Corp.*, 141 F. Supp. 2d 957, 961 (N.D. Ind. 2001) (excluding expert opinion in CERCLA action where conclusions were "too speculative and not sufficiently based upon reliable facts or data to be admissible"). Dr. Williams has no knowledge of any actual releases by Moran during its time on the Site, and in light of the arbitrary and speculative nature of his conclusions, his opinion as to Moran is inadmissible.

Compounding the problem, for his opinion on an owner-operator allocation for the alleged Moran share, Mr. Low relied *exclusively* on Dr. Williams. *See* Rebuttal Report of Matthew Low, relevant excerpts of which are attached as Exhibit D, at 4-5. Just as Dr. Williams may not speculate regarding an alleged owner-operator share, Mr. Low may not adopt such speculation to opine on his own. Judge Marbley's opinion in *Little Hocking Water Ass'n, Inc. v. E.I. du Pont de Nemours & Co.*, 90 F. Supp. 3d 746 (S.D. Ohio 2015), is instructive:

> Mr. White's arbitrary and speculative allocation analysis is not so much an attempt to aid the Court's analysis as an attempt to usurp this Court's authority to arrive at

---

[1] Dr. Williams also opined that if Moran did release substances at the Site, those substances "would have been naturally attenuated in the 50 to 60 years between the time that the releases could have occurred and the RI field investigation." Williams Dep. at 52:1-8.

6

>an equitable cost allocation. See Am. Special Risk Ins. Co. v. City of Centerline, No. 97-CV728974-DT, 2002 WL 1480821, at *10 (E.D. Mich. June 24, 2002) (excluding allocation expert opinion because it did "not 'aid' the Court in understanding the facts; rather [the expert's] testimony attempts to persuade the Court, as it is the attorneys' jobs to do, how it should allocate costs in this case."); Chitayat v. Vanderbilt Assocs., No. CIV A 03-5314 DRH ML, 2007 WL 2890248, at *6 (E.D.N.Y. Sept. 27, 2007) ("[W]hile expert testimony might illuminate the court's consideration of equitable factors, balancing those factors to arrive at an equitable allocation is an essentially judicial function.") (internal quote omitted).

*Id.* at 765 (excluding expert who had "not utilized any scientific methodology to draw" his conclusion, but merely adopted opinion of another expert). There is thus no admissible opinion in evidence as to an alleged owner-operator share for Moran.

### D. Plaintiff's Experts Base Their Opinions on Inadmissible Deposition Testimony and Improperly Opine on The Deponents' Credibility.

Mr. Low testified that he was relying on the inadmissible Kohnen and Brown deposition transcripts to recycle his 2012 allocation on alleged generator liability. *See*, *e.g.*, Low Dep. at 96:10-14, 96:21-97:8, 97:13-98:1, 98:17-99:14 and 100:8-22. Dr. Williams also testified as to his reliance on the Kohnen and Brown testimony. *See* Williams Dep. at 45:13-18. The deposition testimony from these witnesses is inadmissible because neither Sunoco nor Carboline was given an opportunity to cross-examine the witnesses (*See* ETC Sunoco Holdings, LLC f/k/a Sunoco, Inc.'s and Carboline Company's Motion *in Limine* to Exclude 2001 and 2003 Depositions, Dkt. No. 81, Mem. in Supp. at 5-7), and the testimony is not sufficiently reliable even to fall within the residual hearsay exception set forth in Evidence Rule 807 (*see id.* at 7-9).

Plaintiff's experts attempt to rehabilitate the testimony, however, by offering impermissible credibility opinions (even after acknowledging that they were reviewing a written transcript and not a videotape):

>Based on my review of Mr. Kohnen's testimony, I concluded that he knew what he was talking about and had a pretty good and generally reliable recollection of most of his customers including impressive knowledge of their operations. However, his testimony appeared to be less reliable on the key volume parameters (years as a

7

> customer, frequency of shipments per year, volume in each shipment), as evidenced by some notable inconsistencies between his Administrative deposition, Exhibit 7, and his Rule 27 deposition.

Low Rept. at 13.

> At his Administrative deposition, Kohnen demonstrated that he knew a lot about his customers and, in many cases, had some basis for his volume parameter estimates. In collaboration with his attorney, his recollections as of 2002 were memorialized in Exhibit 7. . . .
>
> As I read Kohnen's Rule 27 deposition, I found virtually no basis for the changes in his testimony on volume parameters from his Administrative deposition or Exhibit 7, and, accordingly, I saw no basis for concluding that his recollections in 2003 (Rule 27 deposition) are any more reliable than his recollections in 2001 (Administrative deposition) or 2002 (Exhibit 7).

*Id.* at 14.

This Court, in no uncertain terms, has rejected attempts by experts to bolster deposition testimony by opining on credibility:

> It is clearly established that expert witness testimony concerning the credibility of a fact witness is improper. *Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999) (holding that expert witness testimony regarding credibility of eyewitness testimony is improper); *MAR Oil Co. v. Korpan*, 973 F. Supp. 2d 775, 787 (N.D. Ohio 2013) (holding that an expert report that comments on the credibility of witnesses is improper); *United States v. Scop*, 846 F.2d 135, 142 (2d Cir. 1988) (finding that expert witnesses may not offer their opinions "based on their personal assessment of the credibility of another witness's testimony"). As the Tenth Circuit has explained:
>
>> Such testimony: (1) usurps a critical function of the jury; (2) is not helpful to the jury, which can make its own determination of credibility; and (3) when provided by impressively qualified experts on the credibility of other witnesses is prejudicial and unduly influences the jury.
>
> *United States v. Hill, 749 F.3d 1250, 1258 (10th Cir. 2014)* (internal quotations omitted). Moreover, such testimony "exceeds the scope of the expert's specialized knowledge and therefore merely informs the jury that it should reach a particular conclusion." *United States v. Shay*, 57 F.3d 126, 131 (1st Cir. 1995).

*Hobart Corp. v. Dayton Power & Light Co.*, No. 3:13-cv-115 (Sept. 23, 2019), 2019 U.S. Dist. LEXIS 162467, \*\*79-80. The Court should do likewise here and reject the attempts of Plaintiffs'

8

experts to persuade the Court that the inadmissible depositions from 2001 and 2003 should nevertheless be believed and considered.

### E. Plaintiff May Not Use Its Experts to Present Hearsay Evidence to the Court.

In addition to relying on inadmissible deposition testimony, in its Motion for Partial Summary Judgment Against Defendant Carboline Company (Dkt. No. 65; note that Plaintiff did not seek judgment against Sunoco), Plaintiff relies on several articles from the *St. Louis Post-Dispatch* and the *Xenia Daily Gazette* to support its factual assertions of Moran's business activities (*see* Dkt. No. 65 at 7-10). Sunoco and Carboline further expect that Plaintiff will attempt to rely on other articles produced by the United States in discovery in its cost recovery action against Sunoco. Those documents include more such newspaper articles and columns from past decades such as the "Greene Lights" column from Xenia's 1940's paper *The Gazette*. These documents, however, constitute inadmissible hearsay and should be excluded at trial, for the reasons set forth in Sunoco's and Carboline's Motion *in Limine* on that issue (Dkt. No. 82).

To the extent that Plaintiff intends to change course and attempt to introduce this, or any other, inadmissible evidence into the record through its experts, the attempt should also be rejected. While it is true that Evidence Rule 703 permits an expert to rely on otherwise inadmissible evidence if it is "of a type reasonably relied upon by experts in the particular field," that permission goes only so far. Where, for example an expert will "do little more than regurgitate the conclusions of several journal articles he has read . . . , it will not pass muster under *Daubert*." *Mercurio v. Nissan Motor Corp. in United States*, 81 F. Supp. 2d 859, 863 (N.D. Ohio 2000).

"Rule 703 does not authorize admitting hearsay on the pretense that it is the basis for expert opinion when, in fact, the expert adds nothing to the out-of-court statements other than transmitting them" to the trier of fact. *Sterling v. Provident Life & Accident Ins. Co.*, 619 F. Supp. 2d 1242, 1258 (M.D. Fla. 2009) (excluding hearsay evidence from a Multistate Market Conduct

9

Examination). "In such a case, Rule 703 is simply inapplicable and the usual rules regulating the admissibility of evidence control." *Id.* at 1259 (citing 29 CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 6273, p. 312 (1997)).

In *United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008), the court held that an expert could not testify to the trier of fact about statements from absent declarants:

> Alicea unquestionably relied on hearsay evidence in forming his opinions. This hearsay evidence took the form of statements by MS-13 members given in interviews, both custodial and noncustodial, as well as statements made by other law enforcement officers, statements from intercepted telephone conversations among MS-13 members . . ., and printed and online materials. Alicea's reliance on such materials was consistent with the ordinary practices of law enforcement officers, who "routinely and reasonably rely upon hearsay in reaching their conclusions," [*United States v.*] *Dukagjini*, 326 F.3d [45,] 57 [(2d. Cir. 2003)].
>
> The expert may not, however, simply transmit that hearsay to the jury. *Id*. at 54 ("When an expert is no longer applying his extensive experience and a reliable methodology, *Daubert* teaches that the testimony should be excluded."). Instead, the expert must form his own opinions by "applying his extensive experience and a reliable methodology" to the inadmissible materials. *Id*. at 58. Otherwise, the expert is simply "repeating hearsay evidence without applying any expertise whatsoever," a practice that allows the Government "to circumvent the rules prohibiting hearsay." *Id*. at 58-59.

*Id.* at 197; *see also United States v. Rubi-Gonzalez*, 311 Fed. Appx. 483, 487 (2d Cir. 2009) (where "Alicea acknowledged that hearsay evidence – including books, newspaper articles, websites, audio recordings, and conversations with other law enforcement officers – was the source of much of his information on MS-13," "at least some of his testimony involved merely repeating information he had read or heard").

Thus, even assuming that newspaper articles or columns, for example, are the type of evidence upon which experts in their fields typically rely (and Plaintiff has now shown that they are), that does not make such evidence admissible. Plaintiff may not use Dr. Williams or Mr. Low as "hearsay machines" to put an otherwise inadmissible case before the Court.

10

### III. CONCLUSION

For the foregoing reasons, Sunoco and Carboline request that the Court enter an Order precluding the admission of Dr. Williams' and Mr. Low's inadmissible opinions at trial.

Date:  November 5, 2019

Respectfully submitted,

*/s/ William E. Coughlin*
WILLIAM E. COUGHLIN (0010874)
Trial Attorney
SUSAN R. STROM (0043734)
RONALD M. McMILLAN (0072437)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio  44114
(216) 622-8200
(216) 241-0816 – Facsimile
*wcoughlin@calfee.com*
*sstrom@calfee.com*
*rmcmillan@calfee.com*

Attorneys for Defendants ETC Sunoco Holdings, LLC f/k/a Sunoco, Inc. and Carboline Company